UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BRIAN SLUTZKIN, )<br>        Petitioner, )<br> )<br>v. )<br> )<br>ANDREW CIOLLI, )<br>        Respondent. ) | No. 21 CV 50107<br>Judge Iain D. Johnston |

### MEMORANDUM OPINION AND ORDER

Petitioner Brian Slutzkin has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the reasons that follow, his habeas petition [1] is denied.

### BACKGROUND

Mr. Slutzkin was an inmate at AUSP Thomson when he filed this habeas petition, though the underlying events occurred while he was at USP Allenwood,[1] and he is now at USP Hazelton.[2] His projected release date is May 26, 2022. *See* https://www.bop.gov/inmateloc (last visited February 3, 2022).

On July 3, 2019, officer J. Baptiste completed an incident report describing how, the previous day, he had found an unknown orange substance in Mr. Slutzkin's cell. Response [8] at 16. Analysis revealed that the substance was Suboxone sublingual film, a schedule III controlled substance. *Id.* Officer Baptiste reported finding 180 of the films inside powdered drink mix packets, which had been cut opened and resealed. *Id.* According to the report, officer Baptiste found the altered drink mix packets among Mr. Slutzkin's property, which he had removed from Mr. Slutzkin's cell and inventoried after Mr. Slutzkin had been transferred to the Special Housing Unit. *Id.* The incident report alleged that Mr. Slutzkin's conduct amounted to a violation of Prohibited Act 113 under the Inmate Discipline Program, which is the "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." Bureau of Prisons Program Statement 5270.009 ("Inmate Discipline Program") at 45.

Mr. Slutzkin received a copy of the incident report on July 3, 2019. Response [8] at 16. On August 5, 2019, officer K. Bittenbender conducted a disciplinary hearing. The parties are not in agreement about whether Mr. Slutzkin was accompanied by a staff representative: the disciplinary hearing officer noted that that Mr. Slutzkin proceeded without a staff representative,

---

[1] A habeas petition is properly filed in the district where the inmate is located at the time of filing. *Al–Marri v. Rumsfield*, 360 F.3d 707, 712 (7th Cir.2004).
[2] " . . . a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

Petition [1] at 14, while Mr. Slutzkin contends he had a staff representative, but the representative did a poor job, *id.* at 7. Mr. Slutzkin made two statements during the hearing. First, he stated that, "They aren't mine; I was housed with Lassend and I'll just let him speak before I say anything," and "Lassend got locked up and they told me to pack his stuff and I pulled out what property was his and said to separate his property but I left it alone until the officer came back." *Id.* at 14. Mr. Slutzkin called one witness during the hearing, his former cellmate Mr. Lassend. Mr. Lassend implicated himself by testifying that the powdered drink boxes belonged to him, as did whatever was in the boxes. *Id.* at 15. In addition to the incident report and testimony of Mr. Lassend, other evidence presented at the hearing included the following: a written statement from a prison nurse who positively identified the Suboxone film by noting an "N8" mark on the strips of film and using the Drug.com pill identifier; photos depicting the Suboxone film and Forever Stamps found among Mr. Slutzkin's property; and a memorandum from officer Baptiste stating that all of Mr. Slutzkin's property had been recovered from an unsecure locker, the locker contained legal mail, photos, and envelopes addressed or belonging only to Mr. Slutzkin, that the other locker in the room contained only the clothing and legal mail addressed or belonging to Mr. Lassend, that none of Mr. Lassend's property was found in the locker that contained Mr. Slutzkin's property, and that Mr. Slutzkin's property included the Suboxone films sealed inside mix drink packs along with 1,571 Forever Stamps concealed inside a container for vegetable flakes seasoning. *Id.* at 15-16.

After considering all of the evidence, disciplinary hearing officer Bittenbender determined that the greater weight of the evidence supported a conclusion that Mr. Lassend's testimony was "fictitious," the two lockers were not shared, and that the Suboxone film belonged to Mr. Slutzkin and he had therefore committed Prohibit Act 113. Petition [1] at 16. Sanctions included the disallowance of 41 days of good conduct time, forfeiture of 80 days of non-vested good conduct time, 60 days' disciplinary segregation, 18 months loss of phone, e-mail and visit privileges, and a $500 fine. *Id.*

Mr. Slutzkin appealed, but the Central Office ultimately affirmed the disciplinary decision. *Id.* at 13.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent has not raised exhaustion as an affirmative defense, and Mr. Slutzkin received a decision from the Central Office denying his appeal, Petition [1] at 13, and so it appears he has exhausted.

In his petition, Mr. Slutzkin alleges that the respondent violated his rights to due process in four ways. The Court considers each in turn.

1. **Biased Disciplinary Hearing Officer**

First, Mr. Slutzkin contends that his disciplinary hearing officer was "biased, impartial and racist" because he disregarded evidence that the powdered drink packets with the Suboxone film belonged to his cellmate, and instead concluded that the drugs belonged to Mr. Slutzkin. Petition [1] at 6. Specifically, Mr. Slutzkin contends that during the disciplinary hearing, officer Bittenbender stated that he believed that Mr. Slutzkin's cellmate, Mr. Lassend, was covering for Mr. Slutzkin because they are both Jewish. *Id.* at 7. Officer Bittenbender denies ever referring to Mr. Slutzkin during the hearing as being Jewish. Response [8] at 2.

To establish a due process violation based on bias, Mr. Slutzkin must show that his decision-maker was somehow involved in the underlying incident or its investigation. *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003). Mr. Slutzkin does not contend that officer Bittenbender was involved in the underlying incident or participated in the investigation. Rather, his allegations of bias are premised on officer Bittenbender disregarding the testimony of Mr. Lassend and receipts that proved the powdered drink mix packets were Mr. Lassend's, and officer Bittenbender's alleged reference to both inmates being Jewish. But officer Bittenbender did not disregard evidence that Mr. Lassend claimed ownership of the powdered drink mix packets—in his written decision he specifically acknowledged Mr. Lassend's testimony, but found it to be fictitious. Petition [1] at 16. On review of a prison's disciplinary decision, a court does not second-guess the hearing officer's conclusion by reassessing witnesses' credibility. *See Meeks*, 81 F.3d at 720.

The receipts Mr. Slutzkin mentions are not in the record or mentioned in the discipline hearing officer's written report. To the contrary, according to the report Mr. Slutzkin presented no documentary evidence at the hearing. Petition [1] at 14. And in his appeal he mentioned "that I couldn't provide documentary and evidence of mitigation" during his disciplinary hearing. *Id.* at 11. In any event, at most any receipts would show only that Mr. Lassend

purchased the powdered drink packets originally, not that owned the drugs concealed in the packets.

The Court now turns to Mr. Slutzkin's allegation that officer Bittenbender referred to both cellmates being Jewish. Officer Bittenbender denies ever referring to Mr. Slutzkin as being Jewish, Response [8] at 2, and Mr. Slutzkin never mentioned such a statement when he appealed the disciplinary decision to the Central Officer, Petition [1] at 10-12. But even assuming officer Bittenbender made such a statement, it would not establish that his decision was the result of bias. The statement that Mr. Lassend was taking the blame in order to cover for Mr. Slutzkin because both were Jewish suggests that person motivated by religion was Mr. Lassend. Given that both inmates are reportedly Jewish, plus the fact that the drugs belonged to one or the other, it does not follow that officer Bittenbender's decision that the drugs belonged to Mr. Slutzkin rather than Mr. Lassend was motivated by Mr. Slutzkin being Jewish. A hearing officer is afforded a presumption of honesty and integrity, and Mr. Slutzkin's allegation that officer Bittenbender referred to both inmates being Jewish in the context alleged, even if true, does not overcome that presumption. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

**2.      Staff Representative Did Not Gather Evidence**

Next, Mr. Slutzkin contends his staff representative failed to question any of his witnesses or gather any of the documents or exculpatory evidence Mr. Slutzkin requested. Whether Mr. Slutzkin even had a staff representative is disputed. He contends that he requested J. Mowery represent him at both of his disciplinary hearings that occurred on August 5, 2019, the one for this case and the one at issue in *Slutzkin v. Ciolli*, No. 21 CV 50108. Reply [11] at 3. But according to officer Bittenbender's disciplinary hearing report, Mr. Slutzkin had no staff representative for the hearing on the incident report underlying this case. Petition [1] at 14.

But whether he had a staff representative or not, and whether the staff representative fulfilled his duties, is of no moment because Mr. Slutzkin has not established that he was entitled to a staff representative. Under *Wolff*, a prisoner is entitled to a staff representative only if he is illiterate or his case is complex. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Slutzkin is not illiterate as demonstrated by his briefs, and his case is not complex because it merely involves who owned the contraband found in his cell among his belongings. He contends in his reply brief that his case is complex because he was unable to gather documents on his own before his hearing because he was in the Special Housing Unit. Reply [11] at 3. But he never explains the relevance of any of the evidence he was unable to gather or how it would have made a difference to the outcome of his disciplinary proceeding. As a result, the Court cannot assess whether any of this evidence was exculpatory or even relevant. *See Rasheed-Bey v. Duckworth*, 969 F.3d 357, 361 (7th Cir. 1992) (inmate entitled to exculpatory evidence unless disclosure would threaten institutional concerns).

**3.      Sufficiency of the Evidence**

Mr. Slutzkin argues that his disciplinary hearing officer prevented him from providing exculpatory evidence at his hearing, and that the hearing officer found that the drugs were his despite evidence to the contrary. As noted earlier, to comport with due process, a prison's

disciplinary decision need only be supported by "some evidence." *Scruggs*, 485 F.3d at 941. Officer Bittenbender relied on evidence that the drugs were found in a locker that contained only his belongings, which was separate from a locker that contained only his cellmate's belongings. He also found Mr. Lassend's testimony to be not credible. The court does not second-guess the hearing officer's determination by reweighing the evidence or determining credibility. *See Meeks*, 81 F.3d at 720. The disciplinary decision was supported by some evidence, and therefore Mr. Slutzkin has not established that he was denied due process because of insufficient evidence.

**4.     Excessive Sanctions**

Finally, Mr. Slutzkin contends that the sanctions imposed were excessive because the disciplinary hearing officer "is not authorized to take SGT & GTC good time days prior to the year of the alleged infraction." Petition [1] at 7. He elaborates in his reply brief by stating that "only good time or non-invested good time that can be taken by DHO is the time from the year of the incident and forward. Any good time that Slutzkin earned prior to 2019 cannot be taken by DHO." Reply [11] at 7. But under the statute that provides for good conduct time credits, 18 U.S.C. § 3624(b)(2), "credit awarded under this subsection . . . shall vest on the date the prisoner is released from custody." Accordingly, a prisoner's good conduct time "may be revoked at any time before the date of [his] release." *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011). Under the Inmate Discipline Program, the sanctions available for the violation of a 100-level prohibited act include up to 41 days "of good conduct time credit available for year" and up to 100% of non-vested good conduct time. Inmate Discipline Program at 45. Mr. Slutzkin's loss of good conduct time credits fall within that limit. Mr. Slutzkin also argues that USP Allenwood's Admission and Orientation handbook[3] prohibits assessing a fine. It is not clear that a prisoner's challenge to the imposition of a disciplinary fine is cognizable under § 2241 because it does not impact the duration of incarceration. *See, e.g., Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) (habeas relief is limited to claims in which "the prisoner is seeking to 'get out' of custody in some meaningful sense."). But even if it is, USP Allenwood's A&O handbook allows the imposition of a fine for 100-level prohibited acts. *See* USP Allenwood A&O Handbook at 26, *available at* https://www.bop.gov/locations/institutions/alp/ALP_aohandbook.pdf (last visited February 3, 2022).

**CONCLUSION**

For the reasons given, Mr. Slutzkin's petition [1] is denied, and this case is closed. The motion to expedite judgment [12] is denied as moot. Mr. Slutzkin is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Slutzkin need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the

---

[3] Mr. Slutzkin directs the Court to Section E on pages 65 through 69 of the handbook. The online version appears to have different pagination as it ends at page 36. This Court's review of the handbook reveals no prohibition on fines, but rather the handbook notes at Section E that "monetary fines" may be imposed for all levels of prohibited conduct.

deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Dated: February 3, 2022     By: _____
                                                             Iain D. Johnston
                                                             United States District Judge